Strafford
No. 97-289

THE STATE OF NEW HAMPSHIRE

v.

KEVIN LAURENT

December 28, 1999

*Philip T. McLaughlin*, attorney general (*Mark D. Attorri*, senior assistant attorney general, on the brief and orally), for the State.

*Gary Apfel*, assistant appellate defender, of Orford, by brief and orally, for the defendant.

PER CURIAM. The defendant, Kevin Laurent, appeals his conviction of twenty-five counts of aggravated felonious sexual assault of a child, *see* RSA 632-A:2 (1986 & Supp. 1991) (amended 1992, 1994, 1995, 1997, 1998, 1999), and two counts of felonious sexual assault of the same victim, *see* RSA 632-A:3 (1986) (amended 1997), after a jury trial in Superior Court (*Fauver*, J.). The court sentenced the defendant to an aggregate term of thirty-three and one-half to sixty-seven years incarceration, with additional suspended time. We affirm.

The details of the sexual assaults need not be set forth; in deciding this case, we need examine only those facts and circumstances surrounding the defendant's points of appeal. *See State v. Taylor*, 139 N.H. 96, 98, 649 A.2d 375, 376 (1994). On appeal the defendant argues that: (1) the State violated his right to due process of law;

and (2) the court incorrectly instructed the jury. We address each issue in turn.

## I. Due Process

The defendant contends that the State impermissibly suggested that he subpoenaed witnesses, but did not call them to testify. By so doing, the defendant argues, the State created the inference that the defendant bore the burden of proving his innocence by producing witnesses to corroborate his testimony, thereby violating his right to due process. The first witness in question was the defendant's employer, to whom the victim reportedly revealed the acts of sexual assault. The defendant subpoenaed this witness, yet neither the defendant nor the State called him to testify. While cross-examining the defendant at trial, the State asked the defendant if he knew where his employer resided and whether he had subpoenaed his employer. The other witness in question is the victim's friend, who, according to the victim, was a witness to and victim of sexual assaults by the defendant on numerous occasions. Neither the State nor the defendant called the victim's friend to testify. While cross-examining the defendant, the State asked him if he knew where the victim's friend lived.

"Ordinarily, burden of proof considerations in a criminal trial implicate the due process clause." *State v. Fowler*, 132 N.H. 540, 544, 567 A.2d 557, 559 (1989). "We analyze the defendant's constitutional claims first under the New Hampshire Constitution, referencing decisions of the United States Supreme Court and other jurisdictions only for the purpose of aiding our State constitutional analysis. Because Part I, Article 15 of the New Hampshire Constitution is at least as protective of the defendant's rights as the Due Process Clause of the Fourteenth Amendment, . . . we do not engage in a separate federal analysis." *State v. Marti*, 143 N.H. 608, 611, 732 A.2d 414, 417 (1999) (quotation, citations, brackets, and ellipsis omitted); *see State v. Ball*, 124 N.H. 226, 232, 471 A.2d 347, 351 (1983).

Here, "the prosecutor made a simple inquiry into the identity of the witnesses and their availability for trial." *State v. Otero*, 129 N.H. 444, 447, 529 A.2d 381, 384 (1987) (upholding State's questioning of defendant as to whether he attempted to contact witnesses to go to court). The mere questioning of a defendant about the availability of witnesses will not by itself create an impermissible inference of a missing witness. *See id.* at 447-48, 529 A.2d at 384. Following the State's cross-examination of the defendant, the

jury was clearly instructed that the defendant did not have to produce any evidence. *See id.* Further, at the close of the case, the court instructed the jury on the presumption of innocence and the burden of proof in criminal cases. *See id.* We therefore conclude that the defendant failed to prove a due process violation.

Next, the defendant contends that the trial court erred by denying his motion for a mistrial after the State made impermissible references to missing witnesses during its closing argument, thus violating his due process rights. The statement with which the defendant takes issue referred to defense counsel's opening statement in which, according to the State, defense counsel "talked about a whole bunch of other people, sort of leading you to believe that these people were going to be in here testifying." In response to the State's comments, the trial court twice admonished the State to avoid suggestions that the burden of proof had shifted to the defendant and instructed the State to comment in its closing argument that the burden does not shift to the defendant. The State complied.

Assuming without deciding that the State's remarks during its closing argument standing alone amounted to a comment on the failure of a witness to testify, we hold that under the totality of the circumstances, the State's comments were a permissible rebuttal to the inferences created by the defendant. *See United States v. Hernandez*, 145 F.3d 1433, 1439 (11th Cir. 1998). As the United States Supreme Court explained in a case involving a defendant's failure to testify, it is important in a criminal trial for "both the defendant and the prosecutor to have the opportunity to meet fairly the evidence and arguments of one another." *United States v. Robinson*, 485 U.S. 25, 33 (1988).

The State points to various places in the record where the defendant created an impermissible inference from the fact that the State did not call certain witnesses to testify, thereby justifying the State's subsequent rebuttal. These include: (1) the defendant's opening statement, in which he referenced the victim's statement that she reported the sexual assaults to certain people but that the jury would not hear them testify to that effect; (2) defense counsel's chart, used during cross-examination of the victim, which listed both testifying and non-testifying witnesses, including the defendant's employer and the victim's friend; and (3) defense counsel's cross-examination of the victim, during which he asked if she knew where the defendant's employer and the victim's friend could be found.

■ The defendant's comments regarding the missing witnesses "opened the door" to the State's subsequent remarks. *State v.*

*Turgeon*, 137 N.H. 544, 547, 630 A.2d 276, 278 (1993). Moreover, any harm caused by the prosecutor was cured by the trial court's curative instruction and its final jury instruction in which it stated that: (1) the defendant does not bear the burden of proof in a criminal case; (2) the burden is on the State to prove the defendant guilty beyond a reasonable doubt; and (3) the defendant has no obligation to call any witnesses at all. *See Otero*, 129 N.H. at 448, 529 A.2d at 384. We therefore hold that the court did not abuse its discretion in refusing to grant a mistrial based on the defendant's claim of error. *See Chadwick v. CSI, Ltd.*, 137 N.H. 515, 518, 629 A.2d 820, 823 (1993).

The defendant's remaining argument is vague and undeveloped, and does not require further review. *See State v. Bennett*, 144 N.H. 13, 21-22, 737 A.2d 640, 647 (1999).

*II. Jury Instruction*

The defendant next contends that the court erred in refusing to give two of his requested jury instructions. "In assessing the defendant's appeal, we are mindful that the trial court has discretion to determine whether or not a particular instruction is necessary to assist the jury in reaching a verdict." *State v. Seymour*, 142 N.H. 620, 622, 707 A.2d 130, 132 (1998) (quotation and brackets omitted).

The defendant first requested an instruction that while corroboration may not be necessary to reach a finding of guilt, the jury could consider the lack of corroboration in reaching its verdict. The court permitted the defendant to argue that point in his closing, but declined to so instruct the jury. The court, however, instructed the jury that the question came down to whether they believed the victim's testimony. *See State v. Blake*, 113 N.H. 115, 123, 305 A.2d 300, 305 (1973). The legislature has made clear that a victim's testimony need not be corroborated to sustain a conviction for sexual assault. RSA 632-A:6, I (1996); *see Blake*, 113 N.H. at 123, 305 A.2d at 305. The trial court instructed the jury that although New Hampshire does not require corroboration, "[t]his [does not] mean that simply because [the victim] took an oath to tell the truth [the jury] must accept her testimony as true." We conclude that "this charge adequately apprised the jury of the weight to be given the uncorroborated complaining witness' testimony." *Blake*, 113 N.H. at 123, 305 A.2d at 305.

According to the defendant, *State v. Desilets*, 96 N.H. 245, 73 A.2d 800 (1950), compels us to hold in his favor. We disagree. The issue in

*Desilets* was whether a defendant could be convicted upon the uncorroborated testimony of a sexual assault victim. *Id.* at 246, 73 A.2d at 801. We upheld the trial court's jury instruction that corroboration of the victim's testimony is not required. *Id.* The trial court also cautioned the jury that the crime at issue "is easy to accuse a man of and difficult to find a man innocent of." *Id.* (quotation and ellipsis omitted). The defendant contends that in *Desilets* we implicitly approved a jury instruction that although corroboration is not required, lack of corroboration can be considered. Even assuming the validity of the defendant's assertion, that assumption does not lead to the conclusion that such an instruction is required or that a court's failure to so instruct the jury constitutes reversible error.

The defendant next contends that the trial court erroneously refused to give the jury the following missing evidence instruction:

> A reasonable doubt as to the guilt or innocence of a person accused of a crime can arise either from positive evidence or from a lack of evidence. Thus, the failure of the State to produce evidence may be considered in determining whether or not the State has proven each of these charges beyond a reasonable doubt.

The defendant contends that the instruction was warranted by the fact that two pieces of evidence were missing: certain pages from the victim's diary and a medical report. We note that the defendant does not contend that the evidence was either exculpatory or destroyed by the State. *See State v. Baillargeon*, 127 N.H. 782, 784, 508 A.2d 1051, 1053 (1986).

We review the trial court's failure to give the missing evidence instruction for abuse of discretion. *See State v. Haas*, 134 N.H. 480, 483, 596 A.2d 127, 129 (1991); *United States v. Rose*, 104 F.3d 1408, 1417 (1st Cir. 1997) (holding court did not abuse its discretion by refusing to give missing evidence instruction). The court declined to give the proposed instruction because to do so would invite the jury to speculate impermissibly about evidence not presented, such as DNA evidence, fingerprints, or a confession. This rationale is sound. *See United States v. DeLuca*, 137 F.3d 24, 38 n.16 (1st Cir. 1998) (noting that jury "instruction set forth a perfectly valid proposition: the jury is not to base its verdict on speculation"). The court, however, allowed the defendant to argue this point in his closing to the jury.

The victim testified that she tore out and destroyed a number of pages of her diary in April 1995 because she "thought that it was

stupid for a young 14-year old to be keeping a diary." She began keeping the diary again on a regular basis on May 8, 1995, and continued to do so until she reported the sexual assaults on June 7, 1995. She turned the diary over to the police immediately following an interview conducted during the investigation. According to the State, the missing pages were "never in the State's possession or control."

■ "One of the situations that may warrant [a missing evidence] instruction is when a party with exclusive control over relevant, noncumulative evidence fails to produce that evidence." *Rose*, 104 F.3d at 1417. No inference can be drawn against the State from the mere failure to produce this evidence over which it never had possession or control. The State did not suppress or destroy the pages of the victim's diary. *See* 1 C. TORCIA, WHARTON'S CRIMINAL EVIDENCE § 86, at 271-72 (14th ed. 1985). It would be unfair to hold the missing pages against the State and to require a missing evidence instruction because the evidence at issue was never in the possession of the State and therefore was not missing. *See Rose*, 104 F.3d at 1417.

■ The defendant submits that the State's failure to introduce the results of a physical examination performed on the victim also mandated a missing evidence instruction. The defendant asked the victim whether she was examined and she answered in the affirmative. The defendant does not allege that the State withheld the results of the examination in question from him. *See id.; Niehus v. Liberio*, 973 F.2d 526, 531 (7th Cir. 1992) (requiring missing evidence instruction where litigants frustrated opposing side's efforts to obtain helpful evidence through discovery). Rather, he alleges that the State failed to introduce the results in evidence at trial. The record does not indicate, however, that the defendant could not have introduced the results of the examination himself. *See United States v. Hicks*, 848 F.2d 1, 4 (1st Cir. 1988) (defendant could not complain about lack of access to helpful evidence when he had the evidence at his disposal and chose not to use it). Also, the defendant does not contend that the State destroyed the evidence. *See Spesco v. General Elec. Co.*, 719 F.2d 233, 239 (7th Cir. 1983) (requiring showing of intentional act by party in possession of allegedly lost or destroyed evidence to support missing evidence instruction). Finally, the State conceded during its closing argument that the results of the examination were negative. We hold that failure to give the requested missing evidence instruction did not constitute an abuse of discretion. *See Rose*, 104 F.3d at 1417 (ruling court did

not abuse its discretion in refusing to give missing evidence instruction where State failed to provide readily available evidence); *cf. DeLuca*, 137 F.3d at 38 (ruling court did not abuse its discretion in instructing jury not to concern itself with facts not presented at trial).

*Affirmed.*

BRODERICK, J., did not sit; THAYER, J., sat but did not participate in the decision; the others concurred.